Michael J. Frevola
F. Robert Denig
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Fax: (212) 385-9010
michael.frevola@hklaw.com
robert.denig@hklaw.com

*Attorneys for Plaintiff*
*VL8 Pool, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VL8 POOL, INC.,<br><br>            Plaintiff,<br><br>vs<br><br>GLENCORE LTD.,<br><br>            Defendant, | ____ Civ. _____ |

## COMPLAINT

Plaintiff, VL8 Pool, Inc. ("VL8" or "Plaintiff"), by and through its attorneys, Holland & Knight LLP, for its complaint against Glencore Ltd. ("Glencore"), alleges as follows:

## JURISDICTION

1. This is an action arising out of the sale, supply, and delivery of a parcel of marine fuel by Glencore to in to the market and to Plaintiff VL8, the ultimate purchaser and user of that marine fuel.

2. This is a matter within the subject matter jurisdiction of the Court within the meaning of 28 U.S.C. § 1332, in that it is a dispute between VL8, a company organized and existing under the laws of a foreign country, and Glencore, a foreign corporation registered to do business in New York, NY, for an amount in controversy exceeding the sum of $75,000, exclusive of interest and costs.

3. This matter also, as an independent basis for jurisdiction, falls under this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 as Plaintiff asserts claims for breach of maritime contract and maritime tort claims arising from the sale and supply of defective and dangerous marine fuel into the market for consumption by various vessels, and to VL8 specifically for consumption by the vessel *M/V NAVE PHOTON* (Official No. 9371608) (the "Vessel"). This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's non-maritime claims to the extent that they are so related to the maritime claims that they form part of the same case or controversy.

4. VL8 is a company organized under the laws of the Marshall Islands with offices outside the United States.

5. Upon information and belief, Glencore is a company organized under the laws of a foreign country and registered to do business in New York with an address at 330 Madison Ave., New York, NY 10017. Glencore also has offices at Three Stamford Plaza, 301 Tresser Blvd., 15th Floor, Stamford, CT 06901.

6. Venue is proper in the District pursuant to 28 U.S.C. § 1391(b)(2).

2

## JURY TRIAL

7.     Plaintiff demands a jury trial.

## FACTUAL BACKGROUND

8.     At all relevant times, Plaintiff VL8 was the time charterer of the Vessel.

9.     At all relevant times, the Vessel was owned by, and chartered by VL8 from, Delos Shipping Corp. ("Owners") pursuant to time charter party agreement (the "Time Charter").

10.    At all relevant times, VL8 sub-chartered the Vessel to carry cargo from The Loop in the U.S. Gulf to China.

11.    At all relevant times, Glencore is and was a seller and supplier of marine fuel with operations worldwide, and specifically in Texas.

12.    Upon information and belief, Glencore does not manufacture marine fuel products.

13.    During the period of January 1, 2018, through May 31, 2018, Glencore procured marine fuel from Valero Marketing and Supply Company ("Valero") for sale, delivery, and distribution in the Texas and U.S. Gulf of Mexico region.

14.    During the period of January 1, 2018, through May 31, 2018, Valero directly or indirectly sold, supplied, and delivered thousands of metric tons of marine fuel which were contaminated, off-spec, unfit for consumption and capable of causing serious physical damage to main propulsion engines, auxiliary engines, and other equipment of vessels consuming such fuel.

15. Upon information and belief, the fuel manufactured by Valero during this time period was delivered to more than 150 vessels both directly by Valero in Texas and through intermediary sellers, such as Glencore, in Texas and other U.S. ports, and elsewhere around the globe. Such marine fuel was all distributed through normal distribution channels for Valero's marine fuel products.

16. The fuel manufactured, distributed, delivered, and sold into the market by Valero during the relevant time period was specifically made for and known, by both Valero and Glencore, to be consumed by vessels such as the Vessel.

17. The claims set forth herein by Plaintiff are not unique to Plaintiff. Numerous other fuel purchasers and vessels consuming Valero's products manufactured and sold by Glencore during the relevant time period have suffered similar physical damages and economic losses from Valero's contaminated, off-spec, and defective marine fuel products.

18. The effects of the marine fuel manufactured and sold into the market by Valero and Glencore from January 1, 2018, through May 31, 2018, have been well documented and include, but are not limited to, vessel breakdowns, engine and machinery damage, delays, loss of hire, and other economic losses suffered by vessel owners and charterers alike.

19. Glencore, despite having actual knowledge that the marine fuel product manufactured by Valero that it sold into the market from January 1, 2018, through May 31, 2018, was defective, off-spec, and dangerous to us by vessels, never notified or warned its customers or the end users of its marine fuel products of the known defects in said products.

4

20. On or about March 11, 2018, marine fuel was delivered to the Vessel at the Galveston Offshore Lightering Area ("GOLA"), Texas. Specifically, 4,700 metric tons of HSFO were delivered to the Vessel on March 11, 2018. A true and correct copy of the Marine Fuel Delivery Receipt dated March 11, 2018 (the "Delivery Receipt") – which Delivery Receipt is printed on Glencore letterhead reflecting its Stamford, Connecticut address, and which memorializes the delivery of these marine fuels, is annexed as Exhibit A. An additional amount of marine gasoil ("MGO") was delivered to the Vessel during this time period which is not the subject of Plaintiff's claims.

21. VL8 had ordered the marine fuel through Integr8 Fuels, Inc., which arranged with Glencore for the fueling of the Vessel at GOLA.

22. While VL8 did not directly contract with Glencore for the subject parcel of marine fuel, Glencore was aware that the beneficiary of the marine fuel being sold was VL8 and the Vessel. Indeed, an order confirmation dated March 14, 2018 (the "Order Confirmation") related to the delivery of marine fuel to the Vessel at GOLA specifically identifies the Vessel as the end user of the marine fuel and Glencore arranged for the delivery of the marine fuel to the Vessel. A true and correct copy of the Order Confirmation is annexed as Exhibit B.

23. Furthermore, the Order Confirmation incorporated Glencore's General Terms and Conditions dated December 2015 (the "GT&Cs"). A true and correct copy of the GT&Cs are annexed as Exhibit C.

24. Pursuant to clause 14 of the GT&Cs, disputes arising under the sale of marine fuel are subject to the jurisdiction of this Court.

25.     The marine fuel ordered by VL8 was to be delivered to the Vessel by Glencore at GOLA, Texas, on March 11, 2018.

26.     Glencore delivered the marine fuel to the Vessel at GOLA, Texas, on March 11, 2018.

27.     In total, the Vessel took on approximately 120 metric tons of MGO and 4,700 metric tons of HSFO originally manufactured, produced, and/or sold into the market by Valero (the "Bunkers").

28.     Upon information and belief, the Bunkers were manufactured and sold into the market, or sold directly to Glencore, by Valero.

29.     Upon information and belief, at all relevant times, and prior to delivering the Bunkers to the Vessel, Glencore knew that the Bunkers were manufactured by Valero.

30.     The Bunkers were loaded in to the Vessel's tanks 1P and 2S, which tanks were empty at the time of loading. The Bunkers were not mixed with any other marine fuel on-board the Vessel.

31.     After delivery of the Bunkers to the Vessel was complete, Glencore issued the Delivery Receipt to the Vessel (see Exhibit A).

32.     The Delivery Receipt warrants that the marine fuel being provided "is in conformity with the applicable subparagraph of regulation 14(1) or 14(4) and regulation 18(3) of MARPOL Annex VI."

33. The Vessel did not immediately begin using the Bunkers after they were delivered.

34. The Vessel departed the GOLA shortly after receiving the Bunkers to load cargo at The Loop in the U.S. Gulf for a voyage to Zhoushan, China.

35. On or about April 4, 2018, while transiting the Indian Ocean en route to its discharge port in China, the Vessel commenced using the Bunkers. Almost immediately upon switching over to the Bunkers the Vessel began experiencing serious operational issues.

36. In particular, while using the Bunkers the Vessel's fuel filters became covered with a sticky substance. The Vessel was forced to shut down its main propulsion and auxiliary engines several times to clear its fuel filters. When running the Vessel was forced to run at reduced speeds due to the constant coating and clogging of the fuel filters. The operational issues were related to the use of the Bunkers.

37. Furthermore, while using the Bunkers, the fuel pumps and injectors on the Vessel's main and auxiliary engines clogged and fouled and had to be replaced.

38. While initial, cursory, testing indicated that the Bunkers were on-spec, after experiencing the above described operational issues, Plaintiff had further testing performed on samples of the Bunkers.

39. The further testing ordered by Plaintiff revealed that the Bunkers contained the presence of various fatty acids and other materials which are not normally found in marine fuels.

By this time, however, the Vessel was underway and at sea, and had no option but to continue using the Bunkers.

40. The operational issues onboard the Vessel caused by the Bunkers persisted and became so severe that the Vessel experienced an engine breakdown in the Indian Ocean several days from any port of refuge. As a result of this engineering casualty, the Vessel was forced to arrange for salvage services to be towed into port.

41. As a result of the Vessel breakdown, VL8 was forced to place the Vessel "off-hire" periodically during this time period between April 9 and May 2, 2018, due to the operational issues caused by the use of the Bunkers. This meant that VL8 was precluded from being able to charge its customers for use of the Vessel during these time periods.

42. Furthermore, as a result of the engineering casualty, the Vessel was forced to deviate to Colombo, Sri Lanka, to take on fresh marine fuel because the Bunkers were not safe to use.

43. Because the Bunkers were unsuitable, contaminated, off-spec, and dangerous to use, fresh marine fuel had to be purchased for the Vessel at a price greater than purchase price of the Bunkers.

44. The presence of various fatty acids and other materials and contaminants in the Bunkers caused the fuel to be unsafe to use.

45. The analysis of samples of the Bunkers further showed that the Bunkers did not meet the industry-wide accepted specifications set forth in ISO 8217:201(E), and that the Bunkers were unsuitable and unsafe to use.

46. Furthermore, the Bunkers failed to meet the basic international standard for marine fuel pursuant to MARPOL Annex VI section 18.1, in that the Bunkers were not fit to be used by, and were dangerous to, the Vessel.

47. As a direct result of the Vessel using the off-spec and contaminated Bunkers, the Vessel suffered physical damage to its fuel tanks, piping, fuel system, and to its engines and engine components, causing VL8 to sustain damages in an amount subject to final determination by this Court.

48. Furthermore, as a direct result of the Vessel using the off-spec and contaminated Bunkers, the Vessel's operations were disrupted and delayed, causing VL8 to sustain damages in an amount subject to final determination by this Court.

49. Furthermore, as a direct result of the damage to the Vessel and the operational issues caused by the Valero Bunkers, VL8 faces claims from the Owners and the cargo interests under the Time Charter in an amount subject to final determination by this Court.

## COUNT I

### THIRD PARTY BENEFICIARY BREACH OF CONTRACT AND BREACH OF WARRANTY

50. Plaintiff VL8 repeats and realleges each and every allegation set forth in paragraphs 1 through 49 above as if fully set forth herein.

51. While VL8 did not directly contract with Glencore for the sale of the Bunkers, Integr8 did so and it was at all times known and understood that the Bunkers were being purchased for the benefit and use of the Vessel and VL8.

52. VL8 is a third party beneficiary to the Integr8/Glencore contract for the sale of the Bunkers.

53. The Bunkers that Glencore sold to Integr8, for the benefit of VL8 and the Vessel, were off-spec and dangerous to use as marine fuel.

54. The Bunkers did not meet the standards and specifications for marine fuel set forth in ISO 8217.2010 or MARPOL Annex VI Regulations 14 or 18, in that the Bunkers could not be used safely or without causing damage to the Vessel.

55. Furthermore, the Bunkers were defective, not suitable for use, dangerous, and did not reasonably conform with the ordinary buyer's expectations for marine grade fuels. As such, Glencore breached the implied warranties of fitness and merchantability.

56. As a direct result of Glencore's breach of warranty, and breach of contract, the Vessel suffered physical damage to its fuel tanks, purifiers, fuel system, filters, and to its engines and engine components, causing VL8 damages in an amount that may be finally determined by this Court.

57. As a direct result of Glencore's breach of warranty, and breach of contract, the Vessel's operations were disrupted and delayed, causing Vessel to go "off-hire" and causing VL8 further damages in an amount that may be finally determined by this Court.

58. As a direct result of Glencore's breach of warranty, and breach of contract, the Vessel incurred salvage costs and damages, further causing VL8 damages in an amount that may be finally determined by this Court.

## COUNT II – NEGLIGENCE

59. Plaintiff VL8 repeats and realleges each and every allegation set forth in paragraphs 1 through 49 above as if fully set forth herein.

60. As a physical supplier of marine fuel, Glencore had a duty to provide to the Vessel marine fuel that was suitable and safe for use, and not off-spec or contaminated.

61. Glencore breached this duty by delivering to the Vessel marine fuel that was off-spec, contaminated, unsuitable, unsafe, and which did not conform with applicable specifications and regulations.

62. Furthermore, due to the widespread reports of the defective and dangerous nature of fuel manufactured by Valero, Glencore knew or should have known prior to delivering the Bunkers to the Vessel that the Bunkers were off-spec, contaminated, defective and dangerous to use.

63. As a direct result of Glencore's breach of duty, the Vessel suffered physical damage to its fuel tanks, fuel system, and to its engines and engine components, causing VL8 damages in an amount that may be finally determined by this Court.

64. As a direct result of Glencore's breach of duty, the Vessel's operations were disrupted and delayed, causing the Vessel to go "off-hire" and causing VL8 further damages in an amount that may be finally determined by this Court.

65. As a direct result of Glencore's breach of warranty, and breach of contract, the Vessel incurred salvage costs and damages, further causing VL8 damages in an amount that may be finally determined by this Court.

## COUNT III – PRODUCT LIABILITY

66. Plaintiff Navig8 repeats and realleges each and every allegation set forth in paragraphs 1 through 49 above as if fully set forth herein.

67. Valero is the manufacturer and seller of marine fuel, and specifically the Bunkers that were sold and supplied to the Vessel and that are the subject of this complaint.

68. Glencore sold, and provided to the market, including the Bunkers, marine fuel products that were inherently defective, off-spec, contaminated, unsuitable, unsafe, and did not conform with applicable specifications and regulations.

69. Furthermore, at the time Glencore was providing such defective products into the market, it knew or should have known that the products were defective.

70. Glencore failed to warn its customers about the defective nature of Valero's marine fuel products that it sold during the relevant time period, including the Bunkers provided to the Vessel.

71. As a direct result of Vessel using the inherently defective Bunkers provided to it by Glencore, the Vessel suffered physical damage to its fuel tanks, fuel system, and to its engines and engine components, causing VL8 damages in an amount that may be finally determined by this Court.

72. As a direct result of the Vessel using the inherently defective Bunkers provided to it by Glencore, the Vessel's operations were disrupted and delayed, causing the Vessel to go "off-hire" and causing VL8 further damages in an amount that may be finally determined by this Court.

73. As a direct result of the Vessel using the inherently defective Bunkers provided to it by Glencore, the Vessel incurred salvage costs and damages, further causing VL8 damages in an amount that may be finally determined by this Court.

## COUNT IV – INDEMNITY AND CONTRIBUTION

74. Plaintiff Navig8 repeats and realleges each and every allegation set forth in paragraphs 1 through 49 above as if fully set forth herein.

75. As result of using the Bunkers, and as a direct result of Glencore's negligence and of Glencore placing into the market a product that was dangerous to use, and Glencore's failure to warn its customers about the harmful defects of the product it was selling, the Vessel Owners sustained damages relating to repairs to the Vessel, detention fuel consumption, crew wages, port charges, cargo claims, and salvage costs.

76. Owners have submitted a claim to VL8 related to these costs and damages, claiming that VL8 is liable to Owners for such costs and damages under the Time Charter.

77.     Pursuant to the Time Charter, Owners' claims against VL8 are governed by English law and are subject to arbitration in London.

78.     To the extent that VL8 is liable for Owners' claims arising under the Time Charter related to the Vessel's use of the Bunkers, VL8 is entitled by law to indemnity and/or contribution from Glencore in an amount that may be finally determined by this Court.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff VL8 demands judgment against Defendant Glencore as follows:

(i) Enter judgment in favor of Plaintiff VL8 against Defendant Valero for damages as may be finally determined by this Court together with interest, reasonable attorneys' fees and costs; and

(ii) That the Court grant such other and further relief as may be just and proper in the circumstances.

Date: New York, New York
March 6, 2020

                              HOLLAND & KNIGHT LLP

By: *s/ Michael J. Frevola*
Michael J. Frevola
F. Robert Denig
31 West 52nd Street
New York, New York 10019
Telephone: (212) 513-3200
Fax: (212) 385-9010
michael.frevola@hklaw.com
robert.denig@hklaw.com

*Attorneys for Plaintiff VL8 Pool, Inc.*