# Exhibit C

# GLENCORE Ltd.

## General Terms and Conditions
## For The Sale of Marine Fuels (December 2015)

These General Terms of Sale for Marine Fuels ("Terms of Sale"), in conjunction with the order confirmation agreement ("Confirmation Agreement"), shall be collectively referred to as the "Contract" and contain the entire agreement between the parties and supersede all prior agreements, arrangements and understandings in respect of the same subject. In the event of a conflict between the Confirmation Agreement and the Terms of Sale, the Confirmation Agreement shall take precedent. The Contract shall be deemed firm and binding upon the issuance by Seller of a Confirmation Agreement, unless the Buyer provides Seller with written notification of any objections, errors or omissions within twenty four (24) hours of the date and time that the Confirmation Agreement is sent. The Terms of Sale shall apply to sales by the Glencore Ltd. ("Seller") of bunker fuel oil, intermediate bunker fuels, marine diesel oil, and marine gas oil (collectively hereinafter "Marine Fuels") as and when incorporated by the Confirmation Agreement. As used in the Contract, "Affiliates" means any legal entity which controls, is controlled by, or is under common control with, another legal entity, and "control" means legal or beneficial ownership of fifty percent (50%) or more of the shares in a legal entity entitled to appoint directors or the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such entity.

1. **Prices**

   a) The price for Marine Fuels shall be Seller's spot or term price offered and agreed in the Confirmation Agreement for a specific delivery or series of deliveries. Spot prices offered shall be valid for deliveries made on the Accepted Delivery Date.
   b) Buyer shall pay any taxes (foreign or domestic, VAT, GST, excise and similar taxes), duty, toll, fee, license, impost or other charge, imposed by any taxing authority on the delivery, sale, inspection, storage or use of Marine Fuels, except for taxes on Seller's income. To the extent Seller incurs any of Buyer's taxes listed in the Contract, Seller's invoice will include such taxes as payable by the Buyer. If Buyer is entitled to purchase any Marine Fuels free of any taxes, duties or charges pursuant to local law, Buyer shall promptly, but in any event not later than five (5) business days following completion of delivery, provide to Seller a valid exemption certificate for such purchase.

2. **Credit of Vessel**

   a) Marine Fuels delivered hereunder are sold and delivered on the financial credit of the vessel being supplied (the "Vessel"), as well as on the promise of the Buyer to pay. Buyer warrants that Seller shall have the right to assert a maritime lien, attachment or claim against the Vessel to which Marine Fuels is delivered for the purchase price, any extra charges incurred in accordance herewith, any taxes billed on the delivery of Marine Fuels or otherwise, any interest due thereon including on overdue payments and all associated recovery costs should Buyer fail to pay for Marine Fuels on time. Such remedy shall be in addition to, and not in limitation of, any other remedy available to Seller. Buyer warrants

    that the Marine Fuel purchased hereunder is for the operation of the receiving Vessel and that Vessel only.

b) Buyer shall provide the full contact details of owners, managers and the Master of the Vessel (the "Vessel Interests"), to which Marine Fuels are to be supplied before the issuance of a Confirmation Agreement by Seller. Buyer authorizes Seller to contact Vessel Interests at Seller's sole option, in advance of delivery of Marine Fuels to put the Vessel on notice that the sale and delivery is made on the basis of the financial credit of the Vessel as well as Buyer and on the terms and conditions of this Contract. Seller not contacting the Vessel Interests however shall not limit Seller's rights. Should the Vessel Interests give notice to Seller that financial credit of the Vessel is denied before delivery of Marine Fuels to the Vessel is made, no credit can be granted to Buyer and the Marine Fuels shall be paid for in cash or equivalent, by Buyer, prior to delivery.

c) Any notice by Buyer that a maritime lien on the Vessel may not be created because of the existence in Buyer's charter party of a prohibition of lien clause or similar clause, or for any other reason, must be given to Seller in the initial order for Marine Fuel (hereinafter defined as the Nomination). In the event Buyer provides notice of such restriction, no credit can be granted to Buyer and the Marine Fuel shall be paid for in cash or equivalent prior to delivery. Any notice of such restriction given by Buyer, its agents, Vessel Interest, the Vessel's personnel or other person later than in the Confirmation Agreement shall not modify the Terms of Sale except that any granting of credit by Seller is rescinded on receipt of the notice, with full payment due forthwith from Buyer.

## 3. Quality and Warranty

a) Marine Fuels shall be Seller's commercial grades of Marine Fuels available at the time and place of delivery. Unless otherwise indicated to Buyer in writing by Seller, any information provided to Buyer regarding the characteristics of Marine Fuels at any delivery location shall not be construed as specifications of the Marine Fuel to be delivered hereunder, but only as indications of the general characteristics of the Marine Fuels available at that location from time to time.

b) For sales to Category 3 vessels only: In an ECA, if Marine Fuel sold contains 0.1 wt% sulfur (maximum), then the fuel is designated as ECA Marine Fuel for use in Category 3 (C3) marine vessels only. If Marine Fuel sold contains greater than 0.1 wt% sulfur, then the fuel is High Sulfur Fuel. In an ECA, High Sulfur Fuel is for use only in ships as allowed by MARPOL Annex VI, Regulation 3 or Regulation 4.

**EXCEPT FOR THIS SECTION MARINE FUELS ARE SOLD "AS IS", AND SELLER OTHERWISE MAKES NO REPRESENTATIONS, GUARANTEE, CONDITIONS OR WARRANTIES OF QUALITY, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND ANY IMPLIED WARRANTIES OR CONDITIONS AS TO QUALITY, MERCHANTABILITY OR FITNESS WHATSOEVER, WHETHER STATUTORY OR OTHERWISE ARE EXPRESSLY EXCLUDED.**

c) Buyer shall have the sole responsibility for the selection of suitable Marine Fuels for use in the Vessel. Buyer warrants that the Marine Fuels selected by Buyer for the Vessel are suitable for the Vessel. Buyer warrants that the Vessel nominated by Buyer to receive Marine Fuels is in compliance with all applicable local, national and international regulations and requirements and is free of all conditions, difficulties, peculiarities, deficiencies or defects that might impose hazards in connection with its mooring, unmooring or bunkering.

4. **Nominations and Deliveries**

   a) Buyer shall nominate a Vessel in writing at least five (5) Business days (defined as days on which banks are normally open for business at the delivery port or other location where sales hereunder are made) in advance of the Vessel's Estimated Time of Arrival (the "ETA"). Buyer shall specify the delivery port, ETA and grades, specifications and quantities of Marine Fuels required (the "Nomination"). If such Nomination is accepted and confirmed in writing by Seller through the issuance of a Confirmation, the ETA proposed by Buyer shall become the "Accepted Delivery Date" unless otherwise agreed in writing by Seller. Unless advised in writing by Buyer and accepted in writing by Seller, amendments to the Accepted Delivery Date will not be recognized. Seller may cancel any nomination without liability and without prejudice to any rights Seller may have against Buyer if the Vessel does not present itself for delivery on the Accepted Delivery Date. Seller shall be permitted to accept "prompt" nominations, those nominations given with less than five (5) Business days advance notice. However, such "prompt" nominations will only be supplied on a best endeavors basis and Seller shall have no liability for any delay in the delivery of Marine Fuels with respect to a "prompt" nomination. The Vessel is subject to Seller's acceptance and Seller may refuse to supply Marine Fuels to the Vessel.
   b) In addition to the Nomination, Buyer shall give Seller at least forty-eight (48) hours advance written notice, excluding Sundays and non-Business days, confirming the delivery date, type and quantities of Marine Fuels and providing other delivery details. If such proposed delivery date is a date other than the Accepted Delivery Date, Buyer shall be in breach of the Contract, however, Seller may waive such breach and accept the proposed revised delivery date (the "Revised Delivery Date") and Seller may, at its option, accept such proposed revised delivery date and change the price to reflect current market prices. If Buyer objects to the price change, Seller shall have the right to cancel the order without any further obligation or liability on the part of Seller and Seller may consider Buyer in breach of the Contract. If Buyer fails to provide at least forty-eight (48) hours advance notice Buyer is in breach of this Contract.
   c) When delivery is required other than during normal business hours, and is permitted by applicable port regulations; Buyer shall be fully responsible for and pay all overtime and other associated extra expenses incurred by Seller.
   d) When delivery is made by barge, truck or coastal tanker (hereinafter collectively "Delivery Vessel"), all delivery charges, including overtime and associated charges, shall be for the account of Buyer. For delay caused by Buyer in the use of Delivery Vessel,

      Buyer shall pay any demurrage or detention charges at such rate as may be invoiced by Seller.
- e) Buyer shall notify Seller, in writing at least forty-eight (48) hours prior to delivery (excluding Sundays and non-Business days), of the maximum allowable pumping rate and pressure for the Vessel and Buyer and Seller shall agree on communication and emergency shutdown procedures. If the Vessel's actual receiving rate for Marine Fuels falls below the minimum level set forth in the Confirmation Agreement and the barging company imposes demurrage or other costs due to the slow delivery, all such costs shall be for the Buyer's account.
- f) Buyer shall notify Seller, in writing at least forty-eight (48) hours prior to delivery (excluding Sundays and non-Business days), of any special conditions, difficulties, peculiarities, deficiencies or defects in respect of or particular to the Vessel that might adversely affect the delivery of Marine Fuels. Buyer shall be responsible for any increased costs incurred by Seller in connection therewith. If such special conditions, difficulties, peculiarities, deficiencies or defects exist, Seller may, at its option, cancel the nomination without liability.
- g) When delivery is to be made by the Delivery Vessel, the Vessel shall provide a free and safe berth for the Delivery Vessel alongside the Vessel to receive Marine Fuels and render all necessary assistance that may reasonably be required to safely moor and unmoor the Delivery Vessel.
- h) Buyer shall be responsible for connection of the loading hose to the intake of the Vessel from the Delivery Vessel and shall monitor and direct safe receipt of the Marine Fuels by the Vessel.
- i) If Buyer cancels, terminates or otherwise fails to take delivery, in whole or in part, of the quantities nominated, Buyer shall be responsible for any costs resulting from such failure, including without limitation, lost profits and any costs and expenses incurred by Seller to downgrade Marine Fuels or return unaccepted quantities of Marine Fuels. In such instance, Seller shall not be responsible for any costs resulting from such failure, including without limitation, replacement costs and expenses incurred by Buyer.
- j) Seller shall not be responsible for demurrage on the Vessel if Seller is prepared to commence delivery at any time on the Accepted Delivery Date or the Revised Delivery Date. Seller shall exercise reasonable efforts to adjust to changes in Buyer's schedule. However, Seller or Seller's supplier shall not be liable for demurrage paid or incurred by Buyer due to any delay in delivery of Marine Fuels if:
    - i. the delivery date, which is defined as the date on which hoses are disconnected, was not within the Accepted Delivery Date or was not otherwise accepted by Seller as outlined in Sections 4(a) and 4(b);
    - ii. forty-eight (48) hours advance notice, as defined in Section 4(b), was not given;
    - iii. Seller's Delivery Vessel arrived in a timely fashion and performed according to accepted practice;
    - iv. conditions as set forth in Section 11 below existed;
    - v. Seller was ready and able to perform; or
    - vi. conditions onboard the Vessel resulted in failure to receive Marine Fuels.

k) Should Seller fail to deliver Marine Fuels on the Accepted Delivery Date or the Revised Delivery Date, any claim involving demurrage incurred by the Buyer's Vessel must be submitted by Buyer to Seller in writing within thirty (30) days of the date of delivery. If Buyer fails to submit a demurrage claim within thirty (30) days after the date of delivery, any such claim shall be deemed to be waived and absolutely barred.

l) All deliveries to Seller's customers will be made on a first come first served basis.

## 5. Title and Risk of Loss

a) Delivered to the Vessel. Delivery shall be deemed completed and title to and risk of loss of Marine Fuels shall pass to Buyer as Marine Fuels pass the permanent intake connection between the terminal's or Seller's Delivery Vessel's discharge hose and the Vessel.

b) Delivered to Buyer's Delivery Vessel. If delivery is made to a barge, truck or coastal tanker nominated by Buyer (hereinafter "Buyer's Delivery Vessel") delivery shall be deemed completed and title to and risk of loss of the Marine Fuels shall pass to Buyer as the Marine Fuels pass the last flange of the loading terminal or Seller's discharge vessel and the inlet flange of Buyers Delivery Vessel.

## 6. Inspection and Determination of Quantity and Quality

a) The quantity of Marine Fuels delivered shall be determined, at Seller's option, by measurements in accordance with either: (i) the ASTM Petroleum Measurement Table for Seller's shore tanks or Seller's Delivery Vessel; or (ii) Seller's meters. Buyer will be charged for Marine Fuels on the basis of these measurements. Buyer at its own expense has the right to have its representative or an independent inspector present during measurement, but determination of quantity shall be made solely by Seller. All such measurements noted above shall be final and binding save for fraud or manifest error.

b) Except where contrary to local governmental or port regulations, sampling by Seller or Seller's supplier shall be accomplished by inline drip samplers if available or by the manual, beginning/middle/end method if in-line samplers are not available during the delivery process. Seller or Seller's supplier shall take four (4) representative samples of each grade of Marine Fuels to be delivered. Buyer shall have the right to have its representative witness the drawing of the samples. The aforementioned samples shall be securely sealed and labeled, numbered and identified by name of the Vessel, delivering facility, Marine Fuels type(s), delivery date and place of delivery. One (1) sample shall be given to Buyer's representative for MARPOL compliance purposes only; one (1) sample shall be given to Buyer's representative; and the remaining two (2) samples shall be retained by Seller or Seller's supplier ("Sellers Retained Sample") for thirty (30) days following the date of delivery in a safe place for subsequent verification of the quality thereof if required. Samples drawn at the receiving Vessel's manifold or from

the receiving vessel's tank(s) shall not be considered valid as an indicator of the quality of Marine Fuels supplied.

## 7. Claims

a) Notwithstanding anything in this Contract to the contrary, (i) Seller's obligations or liabilities hereunder shall not include any consequential or indirect damages, including without limitation, deviation costs, demurrage, damage to any Vessels or Buyer's Delivery Vessels or to their engines or tanks, and any actual or prospective loss of profits, and (ii) other than provided in Section 7(f) or in the event of personal injury or death, Seller's maximum liability under this Contract shall not exceed the lesser of the price charged to the Buyer for the Marine Fuels supplied under this Contract or the sum of USD Three Hundred Thousand (US$300,000.00). Buyer agrees that no claim of USD Two Thousand (US$2,000.00) or less shall be made under this Contract.

b) Any dispute as to the quantity of Marine Fuels delivered must be noted at the time of delivery on the bunker delivery receipt or in a letter of protest and presented to Seller by Buyer in writing within thirty (30) days of the date of delivery, failing which any such claim shall be deemed to be waived and absolutely barred. As provided for in Section 6(a) above, quantity determination will be made on the basis of Seller's shore tanks or Seller's Delivery Vessel or Seller's meters. Quantity calculations and quantity claims made on the basis of Buyer's Vessel's measurements shall not be applicable. Quantity claims made on the basis of alleged incorrect density used for Seller's quantity determination shall be addressed by means of analysis of a Seller's sample at a mutually agreed independent laboratory. Should the independent laboratory's determination of density fall within the established test precision range for density, no adjustment to the invoice quantity shall be made and the costs for the analysis of the independent inspector shall be borne by the Buyer. Should the independent laboratory's determination of density fall outside the established test precision range for density the invoiced quantity shall be adjusted, either higher or lower, accordingly and the costs for the analysis of the independent inspector shall be borne by the Seller.

c) Any claim as to the quality of the Marine Fuels delivered must be submitted by Buyer to Seller in writing within thirty (30) days after the date of delivery, failing which, such claim shall be deemed waived and absolutely barred. Buyer shall base its quality claim solely on an analysis of the retained sample provided by Seller at the time of the delivery and include complete supporting documentation; however such analysis shall not be considered determinative of the claim. Providing Buyer issues a claim regarding the quality of the Marine Fuels within thirty (30) days after the date of delivery, one (1) of the two (2) remaining samples of Seller Retained Samples shall be submitted for analysis to a mutually agreed independent laboratory. The independent laboratory's analysis shall be conclusive and binding, absent manifest error or fraud, as to the quality of the Marine Fuels delivered. The analysis shall be established by tests in accordance with ISO 8217 and/or any other specifications agreed to between Buyer and Seller in writing within the Confirmation Agreement. Unless otherwise agreed, should the independent laboratory's analysis confirm that on-specification fuel has been delivered the expenses of the analysis by the independent laboratory shall be borne by the Buyer. Should the independent

      laboratory's analysis confirm that off-specification fuel has been delivered the expenses of the analysis by the independent laboratory shall be borne by the Seller. Any cost associated with the Buyer appointing a representative to witness the sample seal-breaking and/or analysis at the independent laboratory shall be the sole responsibility of Buyer.

d) Buyer shall take all reasonable measures, including retention and burning of Marine Fuels in accordance with Seller's instructions, to eliminate or minimize any costs associated with an off- specification or suspected off-specification supply. Subject to and not to exceed the maximum liability of $300,000 as stated in Section 7 (a) above, Seller will be responsible ONLY for direct expenses incurred for removal and replacement of Marine Fuels. If Buyer removes such Marine Fuels without the consent of Seller, then all such removal and related costs shall be for Buyer's sole account.

e) Seller shall not be responsible for any claim whatsoever arising in circumstances where there is or has been commingling of Marine Fuels delivered by Seller with other fuel aboard the Vessel or Buyer's Delivery Vessel.

f) The parties shall endeavor to resolve the matter one way or the other within forty-five (45) days of receipt of claim. If Seller responds to the Buyer regarding any complaint or claim and Buyer does not acknowledge such response within fifteen (15) days, then the complaint or claim shall be considered closed unless otherwise agreed to in writing by the Seller. Where Buyer and Seller cannot come to agreement on such claim within ninety (90) days from when it was made, either party may invoke the dispute resolution procedures in accordance with the provisions of Section 14 below. However, nothing in this Section 7 shall relieve the Buyer of its obligation to make payments in full when due without offset or deduction as provided herein.

g) Notwithstanding the foregoing, if the Marine Fuels supplied to Buyer from Seller was done on a back-to-back basis such that the physical supplier of the Marine Fuels was a third party, Buyer's recovery from Seller for claims against Seller shall be limited to the funds received by Seller from the third party supplier.

h) In certain locations, Seller utilizes third-party independent operators to provide barging and towage services in connection with the delivery of the Marine Fuels. Seller is not liable for the acts or omission of such operators but, to the extent that Buyer has a claim against such operator, Seller (at the request of Buyer) shall provide the contact information of such operator so that Buyer can pursue a claim directly against such operator.

i) It is a condition precedent to any obligation or liability whatsoever for payment by the Seller that all sums due to it from the Buyer shall have first been paid.

## 8. Payment

a) Unless government regulations require otherwise, Seller shall have the right to invoice Buyer for deliveries of Marine Fuel based upon facsimile or electronic advice or other written communication of delivery details in lieu of original delivery documents. Original delivery documents may be provided to Buyer if requested, but payment shall not be conditional upon Buyer's receipt of such documents. Payment shall be made by Buyer, in U.S. dollars, without discount, offset or deduction whatsoever prior to the time specified in Section 8(b) and in accordance with Seller's written, telegraphic or

other notification of invoice specifying quantities of Marine Fuels delivered and amounts due. Seller may make subsequent adjustments to invoiced amounts based upon information contained in the relevant bunker delivery receipt. Buyer's failure to make payment in frill of the amount noted by Seller shall be considered a material breach of Buyer's obligations under this Contract. Any claims related to the delivery of Marine Fuels shall not relieve Buyer from paying Seller in full.

b) Unless Seller agrees to extend credit to Buyer, payment is due prior to delivery of the Marine Fuels. If Seller agrees to extend credit to Buyer, payment shall be considered past due if not received by Seller within thirty (30) days after the date delivery of Marine Fuels is completed. Overdue payments shall be subject, at Seller's sole discretion, to interest at the rate of two percent (2%) per thirty (30) day period or the maximum rate permitted under applicable law.

c) The Buyer shall periodically provide to Seller that financial information or security deemed necessary by Seller to support any credit extension. If during the life of this Contract, the financial capacity of Buyer becomes impaired or unsatisfactory to Seller in the sole judgment of Seller, advance cash payment or security satisfactory to Seller shall be given by Buyer on demand by Seller and shipments/deliveries may be withheld until such payment or security is received.

d) If payment is not made within 30 days of the date of delivery, or if credit is withdrawn and payment not made upon demand, Seller shall have the right to immediately cancel this Contract.

e) Buyer shall be liable for attorneys' fees and collection expenses whether or not suit is filed. If suit is filed, Buyer shall be liable for all court costs in addition to attorneys' fees and expenses. Said fees, expenses and costs, together with interest shall constitute a part of the Seller's maritime lien on the Vessel. Should Buyer be in default on this Contract for failure to pay, Seller, or Seller's Affiliates shall have the right to cancel any other contracts between Seller and/or its Affiliates and Buyer and/or its Affiliates.

9. **Safety and Environmental Protection**

a) If, at any time prior to or during delivery, Seller reasonably determines that the circumstances for delivery are unsafe or have the potential for a spill (as defined in Section 9 (c) below) occurring due to conditions such as, but not limited to, unsafe or inadequate working environment, practices or procedures, facilities, tools or equipment, incompatible configurations or bad weather, Seller reserves the right not to commence delivery or to terminate the supply immediately without any prior notice to Buyer and without liability. Buyer shall be solely responsible for any loss or damage occurring on board or to the Vessel resulting from any incident arising out of or in connection with any such conditions.

b) By purchasing Marine Fuels from Seller, Buyer warrants that it is familiar with the health effects related to Marine Fuels supplied hereunder and with relevant protective safety and health procedures for the handling and use of such Marine Fuels. Buyer shall adhere to such safety and health procedures while using or handling Marine Fuels. Buyer shall also facilitate the dissemination of health and safety information to all employees, users, and others potentially exposed to Marine Fuels sold hereunder. Buyer

shall be responsible for compliance by its employees, agents or contractors, and other users with all health and safety requirements or recommendations related to Marine Fuels supplied hereunder and shall exert its best efforts to assure that any of its employees or agents, users, and others avoid frequent or prolonged contact with or exposure to Marine Fuels both during and subsequent to delivery. Seller or Seller's supplier accepts no responsibility for any consequence arising from failure by Buyer, its employees, agents, contractors, any users, or any other party to comply with relevant health and safety requirements or recommendations relating to such contact or exposure.

c) If a spill occurs while Marine Fuels are being delivered, Buyer and Seller shall promptly take such action as is reasonably necessary to contain and remove the spilled Marine Fuels and mitigate the effects of such spills. Seller is hereby authorized, at its option and at the expense of Buyer, to take such measures and incur such expenses (whether by employing its own resources or contracting with others) as are reasonably necessary in the judgment of Seller to remove the spilled Marine Fuels and mitigate the effects of such spills. Buyer shall cooperate and render such assistance as is required by Seller in the course of such action. All expense, claims, loss, damage, liability and penalties arising from spills shall be borne by the party that caused the spill. If both parties are at fault, all expense, claims, loss, damage, liability and penalties shall be divided between the parties in accordance with the respective degrees of fault.

d) In the event of a spill during fueling, Buyer shall provide Seller with such documents and information concerning the spill and any programs for the prevention of spills as may be required by Seller or by law or regulations applicable in the port where the spill occurred.

e) Buyer shall comply with all applicable laws and regulations in carrying out its obligations under this Contract, including the ISPS Code and to the extent applicable, MARPOL 73/78 Annex VI. Seller and its duly authorized representatives shall have access to the accounting records and other documents maintained by the other party which relate to Marine Fuels being delivered under this Contract, and shall have the right to audit such records once a year at any reasonable time or times within twenty-four (24) months of the rendition of any statement or invoice forming the basis of such claim.

## 10. Indemnity

a) Buyer shall indemnify and hold Seller and Seller's Affiliates and suppliers harmless from and against any and all claims, demands, suits or liabilities for damage to property or for injury or death of any person, or for non-compliance with any requirement of any governmental entity arising out of an act or omission of Buyer, the Vessel or Vessel Interests or agents or servants in receiving, using, storing or transporting Marine Fuels delivered hereunder, including exposure thereto, unless the same be due to the sole negligence of Seller.

b) Buyer shall indemnify and hold Seller harmless as to any claims, expenses, losses, taxes or penalties arising from Buyer's breach of any of its warranties, including legal fees, interest, costs and expenses.

## 11. Force Majeure

a) Seller shall not be in breach of its obligations, or be responsible for any loss, damage, delay or failure, in the event that performance is prevented or delayed as a result of any one or more of the following events: (1) labor disturbance, strike, stoppage or lock-out, whether involving the employees of Buyer, Seller, its supplier, its barging contractor or otherwise, and regardless of whether the disturbance, strike, stoppage or lock-out could be settled by acceding to the demands of the labor group or laborers involved; (2) compliance with a change, request, direction, order, regulation or law of any governmental authority or agent; (3) shortage in raw material, marine or land transportation, manufacturing, blending or storage facilities or Marine Fuels, whether in whole or in part from the Seller's source of supply; (4) war, civil war, insurrection, commotion or disturbance, acts of terrorism or piracy, tumult, riot, quarantine, arrest, restraint of princes, rulers or people (whether officially declared or not) affecting the port or place of delivery or access thereto; or (5) the effect of adverse weather (including but not limited to hurricanes, typhoons, gales, storms, snow, sleet, hail, lightening, wind, waves, flooding and landslides), mechanical breakdown, breakdown of or damage to facilities, plant, equipment, machinery, bunkering barge or any other form of vessel or vehicle or, act of God; or (6) any other cause whatsoever and howsoever arising which is beyond the reasonable control of the Seller, whether or not foreseeable ("Force Majeure").

b) In the event that performance is prevented or delayed Force Majeure, the Seller may cease or reduce deliveries in any manner as it may determine in its sole discretion. Nothing in the provision shall be deemed to excuse Buyer from its obligation to make payments for Marine Fuels delivered.

## 12. Bonded Marine Fuels

a) Marine Fuels in bond, when available to Seller, may be delivered, provided Buyer qualifies to receive such Marine Fuels. Buyer shall reimburse Seller for any tariff, tax, duty, penalty or other charges subsequently assessed for any reason, including the failure of Buyer to furnish the necessary qualifying proof within thirty (30) days of delivery.

## 13. Miscellaneous

a) Except as otherwise expressly provided herein, no director, employee or agent of Buyer, its subcontractors or vendors, shall give or receive from any director, employee or agent of Seller or any affiliate, any commission, fee, rebate, gift or entertainment of significant cost or value in connection with this Contract. In addition, no director, employee, or agent of Buyer, its subcontractors or vendors, shall enter into any business arrangement with any director, employee, or agent of Seller or any affiliate who is not acting as a representative of Seller or its affiliate without prior written notification thereof Buyer shall not pay or agree to pay, directly or indirectly, any funds or anything of value to any public official or official of a national or international

organization for the purpose of influencing such person's official acts or decisions in violation of the applicable laws of the United States of America ("USA"), United Kingdom ("UK") or the laws of the jurisdiction in which the delivery of Marine Fuels was made.

b) Any representative(s) authorized by Seller may audit the applicable records of the last three years of Buyer for the sole purpose of determining whether there has been compliance with this Section 13(a).

c) Buyer may not assign its rights or obligations hereunder without the prior written consent of Seller, such consent not to be unreasonably withheld or delayed.

d) If any provision or portion of this Contract shall be adjudged invalid or unenforceable by a court or arbitral tribunal of competent jurisdiction or by operation of any applicable law, such provision or portion of this Contract shall be deemed omitted and the remaining provisions and portions shall remain in full force and effect.

e) Modifications or amendments to this Contract shall be valid only when expressly agreed upon in signed writing by Seller and Buyer. The waiver or failure to require the performance of any covenant or obligation contained herein shall not be deemed to constitute a waiver of a similar later breach.

f) Notices under this Contract shall be made and deemed duly given only when delivered in writing to the other party to the address set forth in the Confirmation Agreement, or such updated address as may be specified by a party from time to time.

g) Seller abides by international trade sanctions regulations, including those of the USA, UK and European Union and expressly reserves the right at any time, without liability, to terminate the Contract and/or not to fuel or deliver to Vessels or persons which are subject to or are carrying flags of any country(s) subject to US or international trade sanctions.

h) Where sales are concluded through a broker or an agent, commissions may be paid by Seller to such broker or agent. Any brokers' commission payable by Seller shall not be considered as making that agent or broker Seller's agent or broker and shall only be paid after confirmation of receipt of full outstanding invoice amounts without offset.

## 14. Dispute Resolution

a) **Except as otherwise provided herein, each of the Parties hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York or, if such court does not have jurisdiction or shall not accept jurisdiction, to any court of general jurisdiction in and for the County of New York in the State of New York for the resolution and determination of any dispute between the Parties relating to the construction, meaning or effect of this Contract, or the rights and liabilities of the Parties hereunder, or any matter arising therefrom or connected therewith. Each of the Parties hereby irrevocably waives objection to such suit based upon forum non conveniens and venue. Each of the Parties hereby irrevocably waives actual personal service of process in connection with any action initiated in any court to whose jurisdiction the Parties have by contract submitted, and agrees to accept, in lieu of such personal service,**

written notice of such action given by hand delivery or by certified or registered pre-paid mail (provided that notice shall also be given by telex, facsimile, or other written communication that such mailed notice has been sent, no later than the second day following the date of mailing) to its address as set out in the Special Terms or otherwise notified pursuant to this Contract, or to its principal place of business, and addressed to the Party in question, provided that either Party may cause service of process to be effected in any other lawful manner rather than by use of the aforesaid procedure. The United Nations Convention on Contracts for the International Sale of Goods 1980 shall not apply to this Contract. Notwithstanding the foregoing, Seller is free to bring suit in any jurisdiction and shall be entitled to avail itself of all remedies under maritime or other law to obtain jurisdiction and/or security for its claims against Buyer, its agents or Affiliates, the Vessel, her owners and charterers and any of their respective agents, servants or assigns, including but not limited to vessel arrest and attachment procedures under the Supplemental Rules of Civil Procedure for Certain Admiralty and Maritime Claims or any similar laws, rules or statutes in any jurisdiction.

## 15. Governing Law

a) This Contract shall be governed by and construed in all particulars by the laws of the State of New York (excluding its conflict of law rules which may result in the application of the laws of another jurisdiction) applying the principles of maritime law as applies in the federal District Courts of the United States of America. The maritime laws of the United States shall apply to any determination of the existence of a maritime lien, regardless of the country in which Seller takes legal action.

b) In the event of the potential application of both, or a conflict between, admiralty and bankruptcy jurisdiction, the Parties expressly agree that admiralty jurisdiction pre-empts bankruptcy jurisdiction with respect to the rights and obligations of the Parties under this Contract, and with respect to enforcing maritime lien or attachment rights.

## 16. General Savings Clause

a) Notwithstanding anything to the contrary herein, nothing in this Contract is intended, and nothing herein should be interpreted or construed, to induce or require either Party hereto to act in any manner (including failing to take any actions in connection with a transaction) which is inconsistent with, penalized or prohibited under any laws of the United States of America which relate to foreign trade controls, export controls, embargoes or international boycotts of any type.