**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___3/25/2021___

VL8 POOL, INC.,

                            **Plaintiff,**

           -against-

**GLENCORE LIMITED,**

                          **Defendant.**

**1:20-cv-02053 (ALC)**

<u>**OPINION & ORDER**</u>

**ANDREW L. CARTER, JR., United States District Judge:**

      The Court now considers a Motion by Defendant Glencore Limited ("Glencore") to dismiss the Complaint of Plaintiff VL8 Pool, Inc. ("VL8") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons that follow, the Motion is GRANTED. VL8 is also GRANTED leave to amend the Complaint.

<b>Background</b>

      This matter arises from a contractual relationship between VL8 and Glencore. At the time relevant to the Complaint, VL8 time chartered a vessel, *M/V NAVE PHOTON* (Official No. 9371608) (the "Vessel"), from non-party Delos Shipping Corp.

      Glencore is and was a seller and supplier of marine fuel with operations worldwide, and specifically in Texas. During the period of January 1, 2018, through May 31, 2018, Glencore procured marine fuel from Valero Marketing and Supply Company ("Valero") for sale, delivery, and distribution in the Texas and U.S. Gulf of Mexico region.

      VL8 ordered marine fuel through non-party Integr8 Fuels, Inc., which arranged the fueling of the Vessel with Glencore. Though Glencore and VL8 did not have direct contact, VL8 alleges that "Glencore was aware that the beneficiary of the marine fuel being sold was VL8 and

1

the Vessel." Compl. ¶ 22. Specifically, VL8 alleges that an order confirmation dated March 14, 2018 (the "Order Confirmation") identifies the Vessel as the end user of the marine fuel and that Glencore arranged for the delivery of the marine fuel to the Vessel.

The Order Confirmation incorporated Glencore's General Terms and Conditions dated December 2015 (the "GT&Cs", ECF No. 1-3). Certain provisions of the GT&Cs related to Glencore's liability are here relevant. Section 7(a) of the GT&Cs provides, in relevant part: "[Glencore's] obligations or liabilities hereunder shall not include any consequential or indirect damages, including without limitation, deviation costs, demurrage, damage to any Vessels or Buyer's Delivery Vessels or to their engines or tanks, and any actual or prospective loss of profits . . . ." ECF No. 1-3 § 7(a). Section 7(c) of the GT&Cs requires that "[a]ny claim as to the quality of the Marine Fuels delivered" must be sent to Glencore "within thirty (30) days after the date of delivery, failing which, such claim shall be deemed waived and absolutely barred." *Id.* § 7(c).

On or about March 11, 2018, marine fuel was delivered to the Vessel at the Galveston Offshore Lightering Area ("GOLA"), Texas with a Delivery Receipt (the "Delivery Receipt"). In total, the Vessel took on approximately 120 metric tons of marine gasoil and 4,700 metric tons of HSFO originally manufactured, produced, and/or sold into the market by Valero (the "Bunkers").The Vessel did not immediately begin using the Bunkers after they were delivered. On or about April 4, 2018, while in the Indian Ocean en route to Zhoushan, China, the Vessel began using the Bunkers. Almost immediately upon switching over to the Bunkers the Vessel began experiencing serious operational issues.

In particular, while using the Bunkers the Vessel's fuel filters became covered with a sticky substance. The Vessel was forced to shut down its main propulsion and auxiliary engines

several times to clear its fuel filters. When running, the Vessel was forced to run at reduced speeds due to the constant coating and clogging of the fuel filters. Furthermore, while using the Bunkers, the fuel pumps and injectors on the Vessel's main and auxiliary engines clogged and fouled and had to be replaced.

The operational issues onboard the Vessel caused by the Bunkers persisted and became so severe that the Vessel experienced an engine breakdown in the Indian Ocean several days from any port of refuge. As a result of this engineering breakdown, the Vessel was forced to arrange for salvage services to be towed into port. Additionally, VL8 was forced to place the Vessel "off-hire"  periodically between April 9 and May 2, 2018, due to the operational issues caused by the use of the Bunkers. The vessel also deviated to Colombo, Sri Lanka, to take on fresh marine fuel because the Bunkers were not safe to use, which fuel was more expensive. The Vessel also suffered physical damage to its fuel tanks, piping, fuel system, and to its engines and engine components.

Plaintiff had initially tested the Bunkers to see if they were on specification. However, after the operational problems Plaintiff conducted further testing. The further testing ordered by Plaintiff revealed that the Bunkers contained the presence of various fatty acids and other materials which are not normally found in marine fuels. It also revealed that the Bunkers did not meet industry-wide specification or the basic international standard for marine fuel.

VL8 alleges that from January 1, 2018 to May 31, 2018, non-party Valero directly or indirectly sold, supplied, and delivered thousands of metric tons of marine fuel which were contaminated, off-spec, unfit for consumption and capable of causing serious physical damage to main propulsion engines, auxiliary engines, and other equipment of vessels consuming such fuel. VL8 further alleges that "Glencore, despite having actual knowledge that the marine fuel product

manufactured by Valero that it sold into the market from January 1, 2018, through May 31, 2018, was defective, off-spec, and dangerous to use by vessels, never notified or warned its customers or the end users of its marine fuel products of the known defects in said products." Compl. ¶ 19.

Based on the foregoing allegations, VL8 brings claims for Breach of Contract and Breach of Warranty (Count I), Negligence (Count II), Product Liability (Count III), and Indemnity and Contribution (Count IV). On August 10, 2020, Glencore moved to dismiss the Complaint. On August 24, 2020, VL8 opposed the Motion to Dismiss. On August 31, 2020, Glencore filed a reply in further support of the Motion to Dismiss.

### Standard of Review

When considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "the tenet that a court must accept

4

a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Id*. at 663.

## Discussion

Defendant asserts arguments for the dismissal of all claims by Plaintiff: Breach of Contract and Breach of Warranty (Count I), Negligence (Count II), Product Liability (Count III), and Indemnity and Contribution (Count IV). The Court will consider each in turn.

### Count I Contract and Warranty Claims

Glencore argues that VL8's contract claim should be dismissed because they are barred by (1) the contractual limitation of liability and (2) by VL8's failure to provide timely notice. The Court need not reach the issue of notice, because, for the reasons that follow, it concludes that the limitation of liability in Section 7(a) requires that Count I be dismissed.

Section 7(a) of the GT&Cs states that "Seller's obligations or liabilities hereunder shall not include any consequential or indirect damages, including without limitation, deviation costs, demurrage, damage to any Vessels or Buyer's Delivery Vessels or to their engines or tanks, and any actual or prospective loss of profits." ECF No. 1-3 § 7(a). Glencore argues that each type of damages sought by VL8 is excluded by this provision, and accordingly asks the Court to dismiss Count I. VL8 counters that Section 7(a) is not enforceable because Glencore cannot limit damages caused by its own intentional misconduct or gross negligence. In the alternative,VL8 argues that the damages it seeks are not consequential or indirect in nature, and therefore are not excluded by Section 7(a).

As an initial matter, the Court rejects VL8's argument that Section 7(a) is unenforceable. To be sure, the New York Court of Appeals has held an exculpatory clause like the one at issue

will not protect one from liability for any and all conduct. Rather, "an exculpatory clause is unenforceable when, in contravention of acceptable notions of morality, the misconduct for which it would grant immunity smacks of intentional wrongdoing. This can be explicit, as when it is fraudulent, malicious or prompted by sinister intention of one acting in bad faith. Or, when, as in gross negligence, it betokens a reckless indifference to the rights of others, it may be implicit." *Kalisch-Jarcho, Inc. v. New York,* 448 N.E.2d 413, 416-17 (N.Y. 1983) (citations omitted). However, VL8 has not pleaded any behavior by Glencore that, if true, rises to this level. VL8 alleges that "the Bunkers were manufactured by Valero during a time period in which it had become widely known throughout the industry that marine fuel being produced by Valero was contaminated, off-spec, unfit for consumption, and capable of causing serious physical damage to vessel main propulsion engines, auxiliary engines, and other equipment of vessels consuming such fuel." Opp. at 4 (citing Compl. ¶ 14). VL8 makes no allegations regarding when or how this information became known that indicate that Glencore knew or should have known about this issue at the time of the transaction, or any other relevant time, much less that Glencore was reckless in failing to inform VL8 about the information. Thus, accepting all of VL8's allegations as true, VL8 has failed to plead conduct that would render Section 7(a) unenforceable.

The Court must next consider if, as Glencore argues, the damages sought by VL8 are consequential or indirect damages barred by Section 7(a). VL8 contends that Section 7(a) should be read to preclude "deviation costs, demurrage, damage to [the Vessel] ... or [its] engines or tanks" only to the extent such damage is consequential or indirect, and that the damages it seeks are not precluded because they were "directly caused by the Vessel's use of defective and dangerous Bunkers that Defendant provided to the Vessel". Opp. at 6.

VL8's argument is without merit because even if the Court accepted VL8's reading of Section 7(a), the damages it seeks cannot be defined as other than consequential. "General (or direct) damages", which "compensate for the value of the promised performance", stand in contrast to "consequential damages, which are indirect and compensate for additional losses incurred as a result of the breach". *Versatile Housewares & Gardening Sys. Inc. v. Thill Logistics, Inc.*, 819 F. Supp. 2d 230, 237 (S.D.N.Y. 2011) (citing *Appliance Giant, Inc. v. Columbia 90 Assocs., LLC*, 8 A.D.3d 932, 779 N.Y.S.2d 611, 613 (App. Div. 2004)). Deviation, demurrage, loss of profit and damage to the Vessel constitute consequential damages because they are losses incurred as a result of the breach. *See Tractebel Energy Mktg. v. AEP Power Mktg.*, 487 F.3d 89, 109 (2d Cir. 2007) ("Lost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements"); *Am. Dredging Co. v. Plaza Petroleum*, 799 F. Supp. 1335, 1340 (E.D.N.Y. 1992), *vacated on other grounds by* 845 F. Supp. 91, 93-94 (E.D.N.Y. 1993) (holding that lost profits and damage to a vessel's fuel reserves, engines and filters are consequential damages). VL8 presents no argument that the damages it seeks compensate for the promised performance. Accordingly, the Court concludes that VL8 has only pleaded consequential damages.

Having concluded that VL8 has pleaded only consequential damages, and failed to plead that the Section 7(a) bar on such damages is unenforceable, the Court hereby DISMISSES Count I.

### Count II Negligence and Count III Product Liability

Glencore argues that Counts II and III must be dismissed because VL8, a time charterer of the Vessel, has not pleaded a proprietary interest in the Vessel, and therefore may not recover

under what is known as the *Robins Dry Dock* rule.[1] VL8 counters that it would be premature for the Court to consider whether it has a proprietary interest in the Vessel because "the terms of the relevant time charter agreement between Plaintiff and the Vessel owner are not currently before the Court". Opp. at 16. Further, VL8 contends it may recover because the *Robins Dry Dock* rule does not apply when the owner of the damaged property has shifted its own injury by contract to the party claiming economic losses.

In the Second Circuit, the Supreme Court's *Robins Dry Dock & Repair Co. v. Flint* decision, 275 U.S. 303 (1927), has evolved into "a bright line rule barring recovery for economic losses caused by an unintentional maritime tort absent physical damage to property in which the victim has a *proprietary interest*." *Am. Petroleum & Transp., Inc. v. City of N.Y.*, 737 F.3d 185, 187-88 (2d Cir. 2013) (citing *Gas Natural SDG S.A. v. United States*, No. 07-2129-CV, 2008 U.S. App. LEXIS 22009, 2008 WL 4643944, at *1 (2d Cir. Oct. 21, 2008) (internal quotation marks and citations omitted) (emphases in original)).[2] There is no dispute among the Parties that VL8 alleges physical damage to property in addition to economic loss. However, the Parties disagree on whether VL8 has the requisite proprietary interest in the Vessel to rely on the physical damage it alleges. To establish a proprietary interest, VL8 must plead that it had "actual possession or control, responsibility for repair and responsibility for maintenance" of the Vessel.

---

[1] VL8 argues that the *Robins Dry Dock* Rule is inapplicable because it brought this claim pursuant to diversity jurisdiction. VL8 is incorrect. "When, as in this case, plaintiffs bring a suit based upon diversity jurisdiction, [courts] nevertheless apply substantive federal maritime law if we have admiralty jurisdiction." *Preston v. Frantz*, 11 F.3d 357, 358 (2d Cir. 1993).

[2] VL8 argues that the *Robin Dry Dock* Rule does not apply to product liability cases. This Court concludes otherwise on the basis of the Second Circuit's enunciation of the rule as barring recovery for economic losses caused by an "unintentional maritime tort", *see Am. Petroleum & Transp., Inc. v. City of N.Y.*, 737 F.3d 185, 187-88 (2d Cir. 2013), and the Fifth Circuit's application of the rule in the context of strict product liability, *see Pemeno Shipping Co. v. Louis Dreyfus Corp.*, 238 F. App'x 6, 7 (5th Cir. 2007).

*G&G Steel, Inc. v. Sea Wolf Marine Transp.*, LLC, 380 F. App'x 103, 104 (2d Cir. 2010) (citing *IMTT-Gretna v. Robert E. Lee SS*, 993 F.2d 1193, 1194 (5th Cir. 1993)).

The Court finds both of VL8's arguments without merit. *First*, the Court disagrees with the assertion that it is premature to consider whether VL8 has pleaded a proprietary interest in the Vessel. Courts in this District have evaluated proprietary interest at this stage and dismissed where such interest was not properly pleaded. *See e.g.*, *Allders Int'l (Ships) v. United States*, 94 Civ. 5689 (JSM), 1995 U.S. Dist. LEXIS 5696, at *5 (S.D.N.Y. Apr. 26, 1995); *Plaza Marine v. Exxon Corp.*, 814 F. Supp. 334, 336 (S.D.N.Y. 1993). VL8 cites no authority to the contrary. *Second*, the facts that VL8 argues suffice to plead a proprietary interest are insufficient. VL8 thrice alleges that it paid for salvage services for the Vessel to be towed into port. Opp. at 18 (citing Compl. ¶¶ 40, 65, 73). These allegations alone do not sufficiently plead either actual possession or control, responsibility for repair or responsibility for maintenance. Nor does the Court need to consider whether a contractual provision shifting losses from the Vessel's owner to VL8 would except VL8 from the *Robins Dry Dock* rule, because VL8 has alleged no such contractual provision.

For the reasons above, the Court concludes that VL8 has not pleaded a proprietary interest in the Vessel such that VL8 may recover economic losses. Accordingly, Counts II and III are dismissed.

### Count IV Indemnity and Contribution and Leave to Amend

VL8 requests leave to amend the Complaint should the Court dismiss any of its claims. "In the ordinary course, the Federal Rules of Civil Procedure provide that courts 'should freely give leave' to amend a complaint 'when justice so requires.'" *See Williams v. Citigroup Inc.*, 659 F .3d 208, 212-213 (2d Cir. 2011) (citing Fed. R. Civ. P. 15(a)(2)). The Court will grant VL8

leave to amend the Complaint. In anticipation of VL8's amendment, the Court declines to reach Count IV, the merit of which may be impacted by amendments to Counts I, II and III.

## CONCLUSION

For the reasons above, the Court GRANTS Defendant Glencore's motion to dismiss, but also GRANTS leave for VL8 to amend the Complaint consistent with this Opinion and Order. VL8 is ORDERED to file its Amended Complaint within 14 days.

**SO ORDERED.**

**Dated:** **March 25, 2021**
         **New York, New York**                    _____
                                                   **ANDREW L. CARTER, JR.**
                                                   **United States District Judge**