# Holland & Knight

31 West 52nd Street | New York, NY 10019 | T 212.513.3200 | F 212.385.9010
Holland & Knight LLP | www.hklaw.com

April 27, 2021

*Via ECF*

Hon. Andrew L. Carter, Jr., U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Rm. 435
New York, NY 1007

      Re:    *VL8 Pool, Inc. v. Glencore Ltd.*, 1:20-cv-02053 (S.D.N.Y.)

Dear Judge Carter:

      We represent Plaintiff in the above-referenced action. We write in response to Defendant's letter requesting a pre-motion conference (Dkt. # 22) (the "Pre-Motion Letter") concerning Defendant's anticipated motion to dismiss Plaintiff's Amended Complaint (Dkt. # 21) (the "Amended Complaint").

### 1.    Count I (Breach of Contract and Warranty)

      The Court dismissed Plaintiff's claims for breach of contract and warranty in its original complaint (Dkt. #1) (the "Original Complaint") finding Plaintiff's claim is for consequential damages and thus barred by Section 7(a) of Defendant's GT&Cs. Dkt. # 20 (the "Order"). Exculpatory clauses like Section 7(a) are unenforceable when "the misconduct of which it would grant immunity smacks of intentional wrongdoing … as when it is fraudulent, malicious or prompted by sinister intention … [o]r when, as in gross negligence, it betokens a reckless indifference to the rights of others … ." Dkt. # 20, at 6 (citing *Kalisch-Jarcho, Inc. v. New York*, 448 N.E.2d 413, 416-17 (N.Y. 1983)). The Court, however, held that Plaintiff failed to alleged "any behavior by [Defendant] that, if true, rises to this level." *Id*. While Plaintiff had alleged that it was widely known at the time that Defendant supplied to the Vessel[1] marine fuel manufactured by Valero that Valero's fuel was contaminated and unfit for consumption, the Original Complaint did not contain allegations "regarding when or how this information became known that indicate the [Defendant] knew or should have known about this issue at the time of the transaction . . . much less that [Defendant] was reckless in failing to inform VL8 about the information. *Id*. Plaintiff has addressed these issues in its Amended Complaint.

      Defendant procured contaminated and off-spec fuel from Valero in January 2018, stored the procured fuel at the BOSTCO Facility in bulk, and began supplying the contaminated fuel to vessels the U.S. Gulf of Mexico region and through its other distribution points around the world.

---

[1] Defined terms referenced herein are references to terms defined in the Amended Complaint.

Hon. Andrew L. Carter, Jr., U.S.D.J.
April 27, 2021
Page 2

Amended Complaint, ¶ 17.  The contaminated nature of the marine fuel manufactured by Valero and sold by Defendant were well documented and reported at the time, and Defendant "was fully aware of the contaminated nature of its Valero-supplied fuel stored at the BOSTCO Facility as early as February 2018."  *Id*. ¶¶ 13-14, 20.  On February 8, Defendant supplied marine fuel from the BOSTCO Facility to the *M/V MAERSK ARAS* and the *M/V SOFIE MAERSK*, which vessels immediately experienced operational issues resulting from the use of the fuel.  *Id*.  Defendant was immediately made aware of these issues and the poor quality of the fuel, which issues and claims were entirely consistent with the widely-reported problems with the Valero-supplied fuel.  *Id*. ¶¶ 13-14, 20-21.  Defendant continued to sell and receive claims concerning its fuel from the BOSTCO Facility prior to delivering the Bunkers to the Vessel.  *Id*. ¶ 22.  Accordingly, by the time Defendant supplied the Bunkers to the Vessel, Defendant was well aware of the poor quality of the Bunkers and the damage they could cause to Plaintiff and to the Vessel.  *Id*. ¶¶ 13-22, 33.  Yet Defendant supplied the Bunkers to the Vessel anyway and without warning.  *Id*. ¶¶ 23-25.  Defendant's failure to warn continued after the Bunkers were supplied, but before they were used by the Vessel, during which time Defendant received further claims concerning the condition of its fuel, and during which time the dangerous nature of the Valero supplied fuel continued to be widely reported and was known to Defendant.  *Id*. ¶¶ 23, 56.  Defendant's bad conduct and flagrant disregard for the rights and safety of its customers is further demonstrated by the fact that Defendant continued to sell the contaminated fuel from the BOSTOC Facility to its customers (even after becoming aware of Plaintiff's claims), but Defendant "never notified or warned its customers or end users of its marine fuel products of the known defects in said products."  *Id*. ¶¶ 23, 54-56.  Rather, "Defendant chose to continue selling the contaminated fuel to the market for months knowing full well that the fuel was dangerous to use and could damage vessels, intending all along to rely on the exculpatory and limitation of damages provisions in its GT&Cs to avoid or limit its liability … ."  *Id*. ¶ 56.

These allegations contain sufficient factual assertions that Defendant knew or should have known about the about the contaminated nature of its marine fuel products at the time of the transaction and before supplying the Bunkers to the Vessel, and accordingly the allegations establish conduct on the part of Defendant that renders Section 7(a) unenforceable.  *See Kalisch-Jarcho*, 448 N.E.2d at 416-17; *Morgan Stanley & Co. v. Peak Ridge Master SPC Ltd.*, 930 F. Supp. 2d 532, 544 (S.D.N.Y. 2013); *Deutsche Lufthansa AG v. Boeing Co.*, 06-cv-7667, 2007 WL 403301, at *3 (S.D.N.Y. Feb. 2, 2007).  Defendant intends to argues in its anticipated motion that the Amended Complaint only contains one new fact concerning a single claim related to a marine fuel product sold by Defendant, which Defendants alleged was only one claim "out of the thousands of barrels sold to scores of customers that month."  Pre-Motion Letter, at 2.  As demonstrated above, this is simply incorrect.  The Amended Complaint contains substantial new allegations related to how and when Defendant became aware of the fuel's poor quality before it supplied fuel to the Vessel (and Defendant's subsequent actions, which may implicate fraudulent, malicious or grossly negligent conduct).  This case may very well ultimately raise factual issues concerning what Defendant knew (and when it knew it).  But those types of factual issues cannot be decided on a motion to dismiss, and Defendant's argument only demonstrates that this case needs to proceed to discovery.  *See*, *e.g.*, *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

Defendant further intends to argue for the first time that Plaintiff's claims should be dismissed regardless of whether Section 7(a) is enforceable because consequential damages are not recoverable for breach of contract and breach of warranty as a matter of law. Pre-Motion Letter, at 2-3 (citing *Kenford Co. v. City of Erie*, 73 N.Y.2d 312, 319-20 (1989)). *Kenford*, however, does not stand for the proposition that consequential damages are not recoverable as a matter of law, but rather affirms that such damages are recoverable if of the nature that "the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made." 73 N.Y.2d at 319 (internal quotations omitted). As a matter of law, consequential damages that are foreseeable at the time of contract are recoverable by a buyer, including property damages proximately resulting from any breach of warranty. N.Y. U.C.C. § 2-715(2); *Cohen v. Bratt & Doxey Supply Co.*, 379 N.Y.S.2d 155, 157-58 (App. Div. 2d Dep't 1976) (where goods were not fit for the intended use, plaintiff was clearly entitled to consequential damages from the seller). Plaintiff's damages are exactly the type that are completely foreseeable to a marine fuel seller such as the Defendant. That is why Defendant attempted to include such damages specifically within the scope of Section 7(a) (excluding Defendant's liabilities for consequential damages including "deviation costs, demurrage, damage to any Vessel … or prospective loss of profits …"). The purpose of Section 7(a) was to limit the damages for which the Defendant fairly had supposed it would be liable as a result of its breach of one of its fuel purchase agreements.

Defendant intends to argue further that Plaintiff's claims are barred because of Plaintiff's failure to provide timely notice pursuant to Section 7(c). This argument was raised in the first motion to dismiss, however the Court did not decide the issue having concluded that Plaintiff's claims were barred pursuant to Section 7(a). Order, at 5. Plaintiff submits that the additional allegations in its Amended Complaint only further supports its argument that Plaintiff did provide Defendant with timely notice and that Defendant otherwise knew about the contaminated nature of the Bunkers before delivering the Bunkers to the Vessel. *See* Dkt. # 18, at 7-12.

### 2. Count II (Contribution and Indemnity)

The Court declined to reach the merits of Defendant's initial motion to dismiss Plaintiff's contribution and indemnity claims, noting that the merits may be impacted by Plaintiff's amended pleadings. Order, at 9-10. In the Amended Complaint, Plaintiff alleges that the Vessel's owners have commenced arbitration against Plaintiff in London asserting claims arising from the Defendant's supply of the Bunkers for general average, salvage costs, and the cost of the Bunkers, plus legal costs and fees, for a total sum of about $2.5 million. Am. Compl., ¶ 70. Defendant does not appear to raise any new arguments with respect to Plaintiff's contribution and indemnity claim. The authorities cited by Defendant do not support its broad argument that the tort doctrines of indemnity and contribution do not apply where a plaintiff seeks to recover for contractual liability. *See, e.g.*, *SCAC Transport (USA) Inc. v. S.S. DANAOS*, 845 F.2d 1157, 1159 (2d Cir. 1978) (affirming award of indemnity to Charterer for Charterer's contractual liability to vessel owner under charter party agreement). Plaintiff is prepared to brief this issue in full, and submits that the additional allegations in its Amended Complaint only further supports Plaintiff's arguments.

Hon. Andrew L. Carter, Jr., U.S.D.J.
April 27, 2021
Page 4

Respectfully yours,

HOLLAND & KNIGHT LLP

*/s/ Michael J. Frevola*

Michael J. Frevola

MJF